IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| CYNTHIA DIANA TROXELL | ) |
| | ) |
| v. | ) No. 1:20-0016 |
| | ) |
| KILOLO KIJAKAZI[1] | ) |
|    Commissioner of | ) |
|    Social Security | ) |

**To:** The Honorable William L. Campbell, Jr., District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 20), to which Defendant has filed a response. (Docket No. 22.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 23.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 5.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket No. 20) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

## I. INTRODUCTION

On March 5, 2014, Plaintiff filed an application for disability benefits in which she asserted that, as of the alleged onset date of October 31, 2012, she was unable to work due to degeneration of the cervical and lumbar spine with migraines, carpal tunnel syndrome ("CTS"), and depression. (*See* Transcript of the Administrative Record (Docket No. 18) at 70, 72).[2] Plaintiff's application was denied initially and upon reconsideration. (AR 70.) On February 2, 2016, following an administrative hearing, administrative law judge ("ALJ") Greg Holsclaw denied Plaintiff's claim by concluding that Plaintiff's residual functional capacity ("RFC") permitted her to perform past relevant work. (AR 73-76.)

On February 28, 2017, Plaintiff filed a new application for DIB in which she alleged that, as of a new alleged onset date of February 9, 2016, she was unable to work due to CTS, arthritis, degenerative disc disease, major depressive disorder, bone spurs, and osteoporosis. (AR 83, 99, 120.) The application was denied initially and upon reconsideration. (AR 99-100.) On February 5, 2019, Plaintiff appeared with counsel and testified at a second hearing conducted by ALJ Christopher Sheppard. (AR 32.) On April 22, 2019, the ALJ denied the claim. (AR 12-14.) On February 12, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this civil action, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act June 30, 2017.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 9, 2016 through her date last insured of June 30, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degeneration of the cervical and lumbar spine with migraines; carpal tunnel syndrome ("CTS"); osteoporosis of the left hip; and depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work. Specifically, the claimant had the following exertional and non-exertional limitations: No lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day; no sitting more than six hours out of an eight-hour day; could do frequent pushing/pulling up to the exertional limitations; could do unlimited balancing, and no more than frequent stooping, kneeling, crouching, crawling or climbing ramps or stairs, but no climbing ladders, ropes or scaffolds; no more than frequent overhead reaching and no more than frequent fine fingering or gross manipulation; no work in areas of concentrated full body vibration; no work around dangerous, moving machinery or unprotected heights. The claimant could do no more than simple, routine work; could maintain attention and concentration for two hour intervals necessary to complete simple tasks; no more than occasional interaction with co-workers or supervisors, but no more than occasional contact with the general public; no more than occasional changes in the workplace setting.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant, born on August 10, 1963 was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a)

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 9, 2016, the alleged onset date, through June 30, 2017, the date last insured (20 CFR 404.1520(g)).

(AR 17-26.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Social Security Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported

4

an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if the "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform a range of light work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (AR 17-26.)

### C. Plaintiff's Assertion of Error

Plaintiff argues that the ALJ improperly concluded that he could not deviate from an RFC formulated as part of Plaintiff's first application for disability benefits. (Docket No. 21 at 11.) Based on this alleged error, Plaintiff requests that the Commissioner's decision be reversed and remanded for additional proceedings. (*Id*. at 19.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all

6

Case 1:20-cv-00016   Document 24   Filed 08/16/21   Page 6 of 16 PageID #: 791

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertion of error below.

### 1. The RFC Formulation.

Plaintiff argues that the ALJ erroneously adopted the RFC formulated by ALJ Holsclaw as part of Plaintiff's first application for benefits based on outdated case law. The ALJ explained his decision to assign the same RFC as follows:

> The undersigned specifically considered the 2016 decision by Judge Gregory Holsclaw. The undersigned has thoroughly considered [*Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997)]. There, the Sixth Circuit concluded, where a final hearing decision of [the Commissioner] on a prior disability claim contained a finding of a claimant's residual functional capacity, [the Commissioner] may not make a different finding in adjudicating a subsequent disability claim unless new and additional evidence or changed circumstances provided a basis for a different finding of the claimant's residual functional capacity. After consideration of the entire record, the undersigned does not find new and additional evidence to deviate from the residual functional capacity assigned by Judge Holsclaw.

(AR 15.) This language is taken from Acquiescence Ruling 98-4(6), which the Commissioner implemented in the wake of the *Drummond* decision, *see* 1998 WL 283902 (June 1, 1998), and which represented the prevailing interpretation of *Drummond* in this circuit for many years thereafter. *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 362 (6th Cir. 2004) ("In *Drummond,* this court held that, absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."). *See also Ford v. Berryhill*, No. 5:16-CV-00115-LLK, 2017 WL 2531588, at *1 (W.D. Ky. June 9, 2017) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) establish that an ALJ is bound by the prior ALJ's

7

RFC finding unless there is new and material evidence of a change (improvement) in the claimant's medical condition or a relevant change in the law.").

In 2018, however, the Sixth Circuit issued its decision in *Earley v. Comm'r of Soc. Sec.*, which took pains to rectify what it perceived to be an inappropriate flattening of the *Drummond* holding:

> Unusual facts, it seems to us, led to some overstatement in *Drummond* but not to an incorrect outcome. *Drummond* correctly held that substantial evidence did not support the ALJ's decision. And *Drummond* correctly held that res judicata may apply to administrative proceedings … If an individual, say, files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application. And res judicata would apply in both directions: to bar the government and individuals from relitigating a past final decision for no reason other than to take a second bite at the same apple.

893 F.3d 929, 933 (6th Cir. 2018) (internal citations omitted). The Sixth Circuit then clarified that any application submitted by the same claimant for a new alleged period of disability would warrant "fresh review" of the administrative record to determine whether the claimant's condition had worsened or otherwise justified a change in the analysis from the previous administrative opinion. *Id.* at 934. Nevertheless, the Sixth Circuit cautioned that a claimant filing a second application "should not have high expectations about success if the second filing mimics the first one." *Id.* at 933.

Of separate significance to the instant claim is Plaintiff's date last insured ("DLI"), which is the final date on which a claimant retains insured status for purposes of a DIB claim. A claimant seeking benefits must present evidence that she became disabled prior to the DLI. Plaintiff's DLI is June 30, 2017 (AR 17), which, when coupled with her new alleged onset date, means that she must prove that her disability arose between February 9, 2016 and June 30, 2017 to establish eligibility for DIB. The Sixth Circuit has confirmed that the claimant "bears the

burden of establishing that a disability began before [her] disability insurance expired[.]" *Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015).

Turning to the substance of the assertion of error, Plaintiff accuses the ALJ of disregarding the Sixth Circuit's holding in *Earley* by assigning the same RFC that was formulated by Judge Holsclaw in connection with her first application for benefits. Plaintiff cites decisions from sister district courts to support her claim that the ALJ committed reversible error by "treat[ing] the prior ALJ's RFC as the required starting point of the analysis." *Peterson v. Comm'r of Soc. Sec.*, No. 1:18-CV-1184, 2020 WL 1329332, at *4 (W.D. Mich. Mar. 23, 2020). Plaintiff also points to what she characterizes as "new and additional evidence" of worsening symptoms, which she claims should have yielded a more restrictive RFC that would preclude gainful employment and thus entitle her to benefits.

As an initial matter, the Court disagrees with Plaintiff's suggestion that the ALJ improperly weighed the *Drummond* holding to the exclusion of *Earley*. Plaintiff cites the administrative opinion's acknowledgment of *Drummond* without reference to *Earley* as putative proof that the ALJ improperly assumed ALJ Holsclaw's RFC assignment to be binding. (Docket No. 21 at 12-13), yet the very case Plaintiff cites in support of this claim posits that a reviewing court should look beyond any superficial reference to *Drummond* to determine whether the subject claimant in fact received a fair administrative hearing in adherence to the *Earley* opinion. *See Hogren v. Comm'r of Soc. Sec.*, No. 2:19-CV-854, 2020 WL 830401, at *3 (S.D. Ohio Feb. 20, 2020), *report and recommendation adopted*, No. 2:19-CV-854, 2020 WL 1140058 (S.D. Ohio Mar. 9, 2020) ("The Court must ask whether [the ALJ], despite purporting to follow *Drummond*, gave the evidence a fresh look as required by *Earley* … If so, then the ALJ's decision satisfie[s] *Earley*; if not, then remand [i]s appropriate.") (citing *Johnson v. Comm'r of*

9

*Soc. Sec.*, No. 2:17-CV-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018)) (internal quotations omitted). A more scrupulous reading of the administrative opinion demonstrates that the ALJ did not thoughtlessly endorse ALJ Holsclaw's findings, but instead concluded after a thorough review of the evidence in question that additional functional limitations were not warranted. As discussed below, the ALJ considered the status of Plaintiff's symptoms, treatment, and limitations following the new alleged onset date of February 9, 2016 before finding that Plaintiff's overall condition was sufficiently accommodated by the previously formulated RFC. (AR 18, 21-24.) The Court also notes that the instant ALJ, like ALJ Holsclaw, assigned mental limitations that are more restrictive—and thus more favorable to Plaintiff—than any set forth by a provider or examiner in the record. (AR 23.) Such analysis appears to be compatible with the *Earley* decision:

> Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record … That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

893 F.3d at 933.

Plaintiff nonetheless argues that the ALJ's assignment of an RFC "identical" to the one formulated in 2016 represents reversible error (Docket No. 23 at 2), but the Court sees nothing in *Earley* that prohibits the adoption of the same functional limitations set forth in a prior RFC so long as the ALJ undertakes an independent analysis of the evidence presented in the subsequent application. *See Brent v. Comm'r of Soc. Sec.*, No. 17-12654, 2018 WL 4403418, at *3 (E.D. Mich. Sept. 17, 2018) (finding consistency with the *Earley* holding where "[t]he record establishes that ALJ Matulewicz conducted an independent review of the evidence"). Indeed, the Sixth Circuit made clear that reversible error occurs where an ALJ fails to meaningfully examine

10

the administrative record at issue in determining that a claimant is not disabled. *See Earley*, 893 F.3d at 932 ("Instead of asking whether the evidence supported Earley's new application, [the ALJ] thought he was precluded by the first ruling.").

The Court sees no evidence of rote adoption of the findings from the first administrative opinion. In contrast to ALJ Holsclaw, the current ALJ found that osteoporosis of the left hip constituted an additional "severe" impairment at step two before concluding that the assigned RFC "accounts for the impairment." (AR 18.) The ALJ discussed at length Plaintiff's treatment in 2016 related to back pain and migraines while emphasizing notations in the record revealing "improvement" and "pain relief" from chiropractic treatment and steroid injections. (AR 21.) The ALJ also evaluated and compared imaging reports reflecting Plaintiff's condition both before and after the new alleged onset date of February 9, 2016. (AR 21.) The ALJ further highlighted mild examination findings from a consultative examination report completed by Dr. Barry Burchett in May 2017, which included a normal gait, no evidence of compressive neuropathy in the upper extremities, and a full range of motion in the cervical spine and shoulders. (AR 21-22, 417-20.)

Similarly, the ALJ supplied a thorough assessment of Plaintiff's mental condition since February 9, 2016. The ALJ noted "normal" and "appropriate" mental examination findings in February and July of 2016, as well as Plaintiff's reports to her provider that prescription medication was alleviating symptoms related to depression. (AR 22.) The ALJ also recited in detail the findings from a psychological evaluation performed in April 2017 before explaining

11

his decision to accord the accompanying report only "partial weight." (AR 22-23.)³ Again, such discussion reveals that the ALJ did more than simply parrot the findings of ALJ Holsclaw.

Additionally, the ALJ paid appropriate attention to Plaintiff's symptoms as they were documented during the relevant time period—between February 9, 2016 and June 30, 2017. For example, the ALJ noted that although he considered evidence documenting Plaintiff's treatment with an orthopedist between July 2018 and February 2019, such evidence was "of limited value" since it took place more than a year after the DLI. (AR 20.) Likewise, the ALJ noted that an opinion completed by a physician assistant in December 2018 provided little insight into Plaintiff's condition during the relevant period given that the provider only began treating Plaintiff a year after the DLI. (AR 23.) Such findings not only bolster the ALJ's ultimate decision, *see Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) ("[A] treating physician's opinion is 'minimally probative' when the physician began treatment after the expiration of the claimant's insured status.") (citing *Siterlet v. Sec'y of Health & Human Servs.,* 823 F.2d 918, 920 (6th Cir. 1987)), but also underscores the existence of independent analysis of the medical evidence contained in the current administrative record.

Despite such analysis, Plaintiff contends that the ALJ omitted "new and additional evidence" from his opinion relating to CTS, cervical pain, and migraines, thus demonstrating a failure to provide a "fresh look" at the new application. (Docket No. 21 at 15.) With respect to CTS, Plaintiff cites measurements of her grip strength performed during Dr. Burchett's May 2017 consultative examination, which revealed a maximum grip strength of 17 kg for each hand.

---

³ Applications for benefits filed after March 27, 2017 do not require the ALJ to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). However, in evaluating applications filed before this date, such as the instant one, the ALJ is directed to consider how much "weight" to accord medical opinions in the record based on a variety of factors. 20 C.F.R. § 404.1527(c).

(AR 420.) However, the ALJ's failure to cite this particular finding does not mean that the ALJ failed to adequately evaluate the report. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). Moreover, the Court questions the significance of these measurements given that Dr. Burchett did not express any related functional impact or even reference the measurements in his accompanying narrative report. Dr. Burchett instead documented remarkably mild findings as part of his examination:

> There is no swelling, atrophy, redness, warmth, or tenderness. The hands can be fully extended. A fist can be made with both hands. All fingers can oppose. There are no Heberden's or Bouchard's nodes, or ulnar deviation. The claimant is able to write, and pick up coins with either hand without difficulty. Range of motion of the joints of the fingers of both hands is normal.

(AR 419.) The Court therefore declines to find that the ALJ erred by failing to mention one measurement out of the 12 different categories of measurements included in the report, particularly when the physician performing the examination determined that it did not affect Plaintiff's functioning. (AR 417-22.)

Notably, the ALJ provided an extensive discussion of Plaintiff's wrist and hand symptoms during the relevant time period. The ALJ discussed examination findings demonstrating normal grip strength, normal upper extremity strength, non-tender wrists, and "intact and symmetrical" sensation in Plaintiff's arms and hands. (AR 22.) The ALJ also noted Plaintiff's disinclination to treat her CTS (AR 22, 52, 394)—a finding not challenged in Plaintiff's brief—which itself suggests that the condition is not disabling. *See Gray v. Astrue*, 780 F. Supp. 2d 548, 551 (E.D. Ky. 2011) ("[A] failure to seek treatment for a period of time may be a factor to be considered against the plaintiff[.]") (citing *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1082 (6th Cir. 1987)). This discussion provides ample evidence of

13

the ALJ's efforts to independently review the ALJ's condition following the new alleged onset date.

The Court similarly finds no error in the ALJ's discussion of Plaintiff's symptoms relating to cervical pain and migraines. Plaintiff concedes, as she must, that the ALJ cited numerous records documenting these conditions since February 9, 2016, including a comparison of findings from imaging conducted before and after this alleged onset date, details of Plaintiff's reports to providers, results of treatment, and improvement in her activities of daily living. (AR 21.) The ALJ also cited mild examination findings from 2017, which included a normal gait, negative straight leg raising tests, and a full range of motion in the cervical spine and shoulders. (AR 21-22.) The ALJ further discussed Plaintiff's own indication that the frequency of her migraines had decreased, as well as her report of improvement with chiropractic treatment. (AR 21.)

Still, Plaintiff faults the ALJ for failing to cite "other records that speak to Plaintiff's impairments[.]" (Docket No. 21 at 17.) The Court reiterates, however, that the ALJ is not obligated to reference every piece of evidence in the administrative record for his decision to stand. *Lewis v. Colvin*, No. 3:14-CV-1715, 2015 WL 6160195, at *9 (M.D. Tenn. Oct. 20, 2015). While Plaintiff suggests that the ALJ improperly overlooked evidence of her complaints of cervical radiculopathy (Docket No. 21 at 18), more recent objective evidence—including imaging and physical examinations—confirms the absence of cervical radiculopathy. (AR 648, 651.) Moreover, and significantly, Plaintiff's brief points to no relevant opinion evidence suggesting the presence of more restrictive functional limitations than those included in the RFC. Plaintiff instead asserts that remand is necessary because the ALJ referenced *Drummond* and "never even mentioned" *Earley* in the administrative opinion (Docket No. 21 at 12), although the

14

Court is aware of no authority requiring reversal of the Commissioner's decision based on such action. *See Johnson*, 2018 WL 6440897, at *16 ("Nor could Johnson find error under *Earley*. While the ALJ cited *Drummond* and AR 98-4 … he thoroughly reviewed the evidence from the new period … The analysis reads like a fresh look at a new case, unbeholden to the prior decision.").

Regardless, the Court finds that the ALJ supported his RFC formulation with a detailed discussion of Plaintiff's symptoms, accompanying physical and mental findings, and treatment following the new alleged onset date of February 9, 2016. The ALJ did not improperly tether the RFC assignment to ALJ Holsclaw's earlier opinion, but rather concluded that the new evidence did not "support limiting the claimant further." (AR 25.) It is clear that the ALJ endeavored to provide a fair hearing in connection with Plaintiff's second application and gave a "fresh look" to the evidence of record. For these reasons, the Court finds that substantial evidence supports the ALJ's decision. Plaintiff's assertion of error is therefore rejected.

## V. RECOMMENDATION

Based on the foregoing analysis, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 20) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's

order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

                                          Respectfully submitted,

                                          BARBARA D. HOLMES
                                          United States Magistrate Judge